United States v. DeSimone Good morning, your honors, and may it please the court. My name is Khalil Al-Assad, and I represent the defendant, Joseph DeSimone. We ask the court to remand the case back to the district court for re-sentencing consistent with the statute 18 U.S.C. 3553, and first, I would like . . . should have done that he didn't do. Joseph DeSimone Well, your honor, the district judge simply treated two defendants who were . . . or three defendants who were similarly situated in every relevant way differently. Defendant DeSimone received the maximum two years, the statutory maximum was above the guideline range of four to eleven months, while two of his co-defendants, John Pellizzolo and Ronald Gialanzo, who engaged in the same association violation on four occasions, received a more lenient sentence of a year and a day. There was no difference between them that made your client's behavior worse than theirs? Joseph DeSimone Well, there actually is a difference, your honor, and the difference would favor my client because . . . Judge Sotomayor What is that difference? Joseph DeSimone DeSimone met with Bonanno crime family members on two occasions, whereas the other co-defendants, each of them engaged in the same association violation on four different occasions. Judge Sotomayor Were the violations, that is the meetings, that they went to similar or not similar? Joseph DeSimone Judge Sack, the same exact meeting with Bonanno crime family members was attended by all . . . the two meetings on which . . . Judge Sotomayor Wasn't Gialanzo's underlying offense, didn't that involve a boiler room, brokerage firm, willings and dealings through extortionate means, whereas DeSimone's underlying conduct involved murder, right? And while Palazzo, he was mixed up with the same murder plot as DeSimone, he apparently only assisted in the murder and the cleanup after the murder, so they're different . . . they're not necessarily similarly situated, right? Joseph DeSimone Well, Chief Judge Kastner, they're not similarly situated in the underlying criminal offense, however, they are similarly situated when it comes to the violation conduct. Judge Sack Isn't it more dangerous if you have a more dangerous crime of which you have been convicted? Joseph DeSimone Well, Your Honor, co-defendant Palazzolo was convicted of the same conspiracy to commit murder as DeSimone, but the point is that DeSimone served his time, served a 12-year incarceratory term for the underlying conviction, and this Court has said that if a sentence for a revocation sentence for violation of supervised release is nothing but an enhancement on the punishment for the underlying crime, then that could make it constitutionally suspect. But even if the Court were to look at the underlying crime, the underlying crime is the same one with respect to co-defendant Palazzolo, but more importantly, the district judge below did not offer that reason for the disparity, and when asked by co-defendant's counsel about the disparate treatments and the disparity in sentences, the district judge simply didn't offer an explanation, and the Court cannot on appeal conjure up an explanation for the district judge. Where is the jurisprudence, because I guess it will only be in case law, from this Court that says this disparity is illegal, this disparity requires us to remand the case to the Court for resentencing? Well, Your Honor . . . Have we ever said that? The Court said in United States v. Ebers, decided in 2007, that you are willing to remand the case back to the district court if a defendant credibly argues that a sentence disparity has no apparent explanation. It's not a requirement, right? In other words, we have case law like, for example, many cases, for example, the Galliani case where the Court says that . . . of course, remember we're viewing under plain error here . . . that Section 355.3a.6 requires a district court to consider nationwide sentence disparities, but does not require district court to consider disparities between co-defendants. Yes, Your Honor, but that was in the context of a defendant requesting a departure from the guideline range. That is important because that line of cases where the Court said a district court need not consider disparities between co-defendants and only nationwide disparities was an interpretation of 3553 subsection a.6 that was before Booker, the guidelines were mandatory. This Court reasoned that if a district judge were to depart from the guideline range based on co-defendant disparity, then defendants throughout the country would receive or there would be . . . the Court would be creating disparity between the defendant's sentence and other defendants similarly situated nationwide. But after Booker and the guidelines becoming advisory, district courts are departing from the guideline range in a lot of cases for a lot of different reasons. Even if the guidelines were still mandatory, this is not a case where the defendant is requesting a departure, a downward departure or a guideline range. All the defendant is asking . . . all the defendant asked for below was a guideline range or a guideline sentence between the range of four to eleven months. The district judge sentenced him to the statutory maximum while giving similarly situated co-defendants a more lenient sentence. Within the span of two to three months, all three defendants were sentenced by the same district judge. I see that my time is up. Thank you. Thank you. You'll have two minutes in rebuttal. May it please the Court. My name is Lindsay Gerdes and I'm appearing on behalf of the United States in this matter. I also represent the government at the district court level in this case. Simply put, the district court did not commit procedural or substantive error when it sentenced DeSimone to two years' imprisonment. The chief judge, the presider, referred to this being a plain error case. Is that correct? Yes. The defendant did not object to the sentence at the district court level. In fact, the defendant actually withdrew his sentencing recommendation of four based on the conduct here, but even under any standard of review, Your Honor, whether it's plain error, I know the appellant has argued for a lesser standard under a modified plain error, under abuse of discretion. The district court here made very detailed findings on the record and in its statement of reasons when it sentenced DeSimone to two years' imprisonment. It considered the 3553A factors, the nature and circumstances of the offense specifically that this was meetings the defendant attended only a year after being released from prison with top echelon members of the Bonanno crime family. Counsel, I agree that Judge Garifas touched many bases when he explained what he did, but remind me of the record please. Did he address what counsel, your opposing counsel is saying was this disparity between the two or did he not? I think he did not address that, but I may be . . . The procedural history of this was that he ended up addressing it when he sentenced Pipitone who was sentenced to two years just after Mr. DeSimone, but Judge Garifas did not have institutional knowledge of these cases and he did point out distinctions. You're saying they had the same sentence? That's correct. DeSimone received a two year sentence and then Pipitone who came shortly thereafter also received a two year sentence for similar association violations, some of the same meetings that Mr. DeSimone attended. In fact, other similarly situated defendants charged with even less egregious association violations received more than a year and a day sentence. We pointed to three of those instances in our brief. In U.S. v. Watts, a violator received a two year sentence for three association violations. Pipitone, again, received two years for some of the same meetings. In U.S. v. Chile, another defendant received an eighteen month sentence for a single association violation, but when my opposing counsel was indicating that there are simply no differences between DeSimone and individuals who receive lesser sentences, I don't think the record supports that and I think your honors indicated some of the other differences. DeSimone is somebody who is 82 years old. He has gone undeterred by his previous periods of incarceration. He has held the captain status in the Bonanno crime family and been an associate for decades. Also, Giolanzo, the court had pointed out, is younger. He's half DeSimone's age. He was fully employed, responsible for taking care of family members. Your suggestion that because he's older . . . it sounds like you're suggesting because he's older, he should get more time rather than less time. I'm not sure that's . . . is that what you mean to suggest? What I was suggesting was, the district court had indicated that there was simply nothing virtually that it could do to stop Mr. DeSimone and provide any kind of deterrence for him based on his criminal history to that point and his continued association. Even at the age of 82 with the Bonanno crime family. He indicated that the defendant could be home playing with his grandchildren, yet these were the choices he made. Great, great. Great, exactly. That's exactly what he said, that he could be making other life choices. I'm sorry, Your Honor. I'm sorry. Use the word egregious, and I just want to talk to you a bit about that. You say a number of times in the briefing that the violation of the supervised release report described DeSimone's conduct as, and I'm quoting from the red brief. It's on 5, 8, and 25, and I'm quoting the VOSR 1011. By far the most egregious association violation involving organized crime members the signing officer has seen. And you are now arguing that the, as I understand it, that the disparity between Mr. DeSimone's sentence and that given to Lanzo is reasonable because they are not defendants of equal credibility. But you previously described Lanzo's conduct using precisely the same language. In a letter to Judge Garifas concerning Galeano's sentencing submitted, the government wrote, other organized crime figures have faced association violations. But none of this magnitude, Ronald DeAlonzo's conduct is by far the most egregious, given the number of his association violations, the span of time in which the violations occurred, and the members of the crime family defendant associated with the leadership of the Bonanno crime family. So, who is the most egregious? I mean, they can't all be the most egregious. Your Honor, I think that in hindsight, it's the attendance of these three defendants who were on supervised release at these meetings. When you're comparing their association violations with the violations of, say, Chilly and Watts, who had more one-on-one meetings with members of the crime family. The association violations of Gialonzo, Pipitone, and DeSimone involved the top echelon members of the crime family where one can only assume that the business and affairs of the Bonanno crime family are being conducted. Even the defendant at sentencing did not object and did not try to offer any other explanation for DeSimone's attendance. You should have said these defendants rather than this defendant. That may have been more appropriately put, Your Honor. But I think that as the court is considering Judge Garifas's sentence, the court did not, by any means, abuse its discretion when it gave Mr. DeSimone the above guideline sentence. It considered the guidelines, it considered all of the 3553A factors, and it gave a very detailed rationale as to why Mr. DeSimone deserved a two-year sentence. The court even indicated that Mr. DeSimone may need more time than that to reflect on his conduct. What is your view about, your adversary would like us to require consideration of sentencing disparities among co-defendants, which would possibly require a revisiting of our circuit precedent. Do you think we should revisit our circuit precedent? No, your honor, I don't think the court needs to do that in this case. And as far as going through those legal gymnastics, I think that the record here before your honors actually indicates that the district court throughout the sentencing proceedings, in fact, considered the sentencing disparities between co-defendants. But the law is, it's a nationwide consideration, and we have pointed to not only situations where defendants beyond the scope of co-defendants received more severe sentence, but we've indicated that even a co-defendant here received a sentence commensurate with the sentence that Mr. DeSimone received. So I don't think that the court needs to go through those legal gymnastics. In this instance, I think Mr. DeSimone was very deserving of the two year sentence based on the record, based on all of his personal characteristics, and I do think that the court should uphold and affirm the district court sentence because it was well reasoned, it was thought out, and it was consistent with all of the considerations. Would it make more sense though from an administration of justice point of view to say that consideration of disparities among co-defendants is something that should be done? Should be required? Your Honor, I don't think that every defendant is situated differently. I don't think that this needs to be the case that the court changes its circuit precedent on those considerations. But as a general matter, what is your view? I understand your view as to this case, that it's not necessary. Your Honor, I think what's important in these cases is that the court consider each defendant individually. And I do think that many of the courts already consider what is going on with co-defendants in cases. I think it's something that comes natural a lot of times when judges- As does the government, right? I mean, the government will argue the differences between various defendants, and frankly, defense counsel will argue the same thing when making a sentencing pitch to the court, right? Exactly, Your Honor, and that was done in this- It's not unusual that in multi-defendant cases, this sort of consideration is at least argued and then presumably, and I think our presumption is, the district court considers it. I agree with that, Your Honor. Thank you. There are no other questions. The government will rely on its briefs. Thank you. Thank you. Mr. El-Assad, let me just ask you, because I think the sociology which we hear from time to time sitting up here, and I know the district courts consider, and I'm sure the government and defense council considers it. As people age out, eventually they get over their criminal proclivities. And it ideally occurs quite young, but I think maybe the science is somewhere in the 40s. And was it not a fair factor for Judge Garifas to consider the age of your client and the fact that he doesn't seem to understand the word no? Well, Your Honor, age is a relevant factor and district courts have- And both ways, right? Agreed on that, correct. And the judge did consider it, if the court looks at appendix page 111, the court actually reasoned in sentencing Gialonzo that because he is an able-bodied person who is in his 40s, the court was explaining its more lenient sentence of a year and a day to Polozolo because of his medical condition and because of his age. And the court said, and I quote, he's on death's door, and that is why I gave him that sentence. Which makes him indistinguishable from our defendant who is a few years older than Polozolo, and I believe he's 84 now, but the court still gave Gialonzo the more lenient sentence while giving DeSimone the statutory maximum. Was it health-related though? Was it a sense of . . . We had a health-related reason that was indistinguishable and it was brought to the district court's attention that Mr. DeSimone suffered from a heart condition. But there are a few points I would like to get through, and I may not be able to get through all of them, but this court has said in many cases that if a district court were to conclude that two sentences equally served the purposes of sentencing, it could not impose the higher sentence consistent with the parsimony clause. And the court concluded that the sentence of a year and a day was sufficient to deter the same type of conduct, the same type of association violation. But for a different person. For a different person who attended the same meetings. 80 years old who doesn't understand the word no. But a co-defendant of defendant was also about 80 years old and was actually elevated to acting street boss of the Bonanno crime family. And that was brought to the district court's attention in a letter by the government, and that's all in our brief. And so you have two co-defendants. You could distinguish one but not both of them. And there is simply no basis, no genuine basis on which this court could affirm the sentence. And this court need not revisit its precedents regarding sentence disparity because all that line of cases, in every case, the court was presented with a request for departure from the guideline range. And in every such case, the court said, district courts cannot depart from the guideline range based on co-defendant disparity because they would be introducing disparity on a national level. But in this case, there is simply no request for a downward departure from the guideline range. All the defendant is asking was for a guideline sentence. And the defendant did not forfeit or waive the right by withdrawing or not making an objection as sentencing. Defense counsel withdrew his request for a four-month sentence, which was the bottom of the guideline range, but still requested a sentence within that range of four to 11 months. And just by not objecting after the defendant was sentenced, that would not trigger a plain error review on appeal. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.